| | |
|---|---|
| MILLS CONSTRUCTION CORPORATION, INC., and NEIL CROTHERS, <br><br> Plaintiffs, <br><br> v. <br><br> NAUTILUS INSURANCE COMPANY, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> *  1:18-cv-10549-IT <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

March 31, 2019

TALWANI, D.J.

The parties in this insurance coverage dispute have filed cross-motions for summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [#21] is GRANTED and Plaintiffs' Motion for Summary Judgment [#25] is DENIED.

I.    Factual Background

Plaintiffs Mills Construction Corporation, Inc., and its president, Neil Crothers,[1] purchased commercial general liability ("CGL") insurance from Defendant Nautilus Insurance Company ("Nautilus"). Plaintiffs' Statement of Material Facts ("Pls. SOF") ¶ 31 [#27]; Defendant's Statement of Material Facts ("Def. SOF") ¶¶ 18-19 [#23] & Ex. C (Nautilus Policies ("Policies")) [#23-3].

In October 2017, Plaintiffs requested defense of a suit brought against them in Superior

---

[1] Because there is no dispute here that requires the court to differentiate between the corporation and its president, this Memorandum and Order uses "Mills" to refer both to the corporation alone and to the Plaintiffs collectively.

Court by Collette Sychantha. Pls. SOF ¶ 39 [#27] & Ex. J (Letter to Kym Baldyga, Eastern Ins. Grp. (Oct. 23, 2017)) [#27-5], refiled at Joint Mem., Att. 1 [#42-1] [2]; Def. SOF ¶ 1 Ex. A (Sychantha Amended Complaint ("Sychantha Compl.")) [#23-1], refiled at Joint Mem., Att. 2 [#42-2]. In her complaint, Sychantha alleges that she hired Mills and Crother in June 2014 to "perform construction work to rebuild the Premises" after a November 2013 fire damaged her property. Sychantha Compl. ¶¶ 4-5 [#23-1]. The complaint alleges that Mills and Crother undertook demolition of the "damaged Premises," and that during demolition, they damaged the foundation. Id. ¶ 7. The foundation damage allegedly led to delays and required relocating the home. Id. ¶¶ 8-10. The complaint alleges further that once construction started, it "did not proceed smoothly." Id. ¶ 11. The "many problems with the construction of the home" allegedly included improper construction of various parts of the house, the "exterior deck is not properly supported," the "foundation lacks rebar," and Mills' failure to complete work. Id. ¶¶ 1-17. Sychantha claimed Breach of Contract, Negligence, Breach of Warranty of Habitability, Negligent Misrepresentations, Negligent Supervision, and violation of Mass. Gen. L. c. 93A. Id. ¶¶ 22-66.

In November 2017, Nautilus denied Plaintiffs' request for coverage. Def. SOF ¶ 23 Ex. D (Letter to Mills (Nov. 27, 2017)) [#23-4], refiled as Joint Mem., Att. 3 [#42-3]. Notwithstanding the denial, Nautilus requested that Mills "provide for our consideration any additional information or facts you currently have in your possession or may develop in the future that may change our decision regarding coverage of this loss, thereby providing us the opportunity to reconsider our position." Id. at 13.

---

[2] As the court directed, see Elec. Clerk's Notes [#40], the parties filed a Joint Memorandum of Correspondence Between the Parties and Documents Disclosures by the Plaintiffs ("Joint Mem.") [#42] setting forth a timeline and attaching (in the order set forth on the timeline) copies of documents from the summary judgment record. Joint Mem. [#42].

The next month, Plaintiffs again contacted Nautilus requesting coverage. Pls. Reply to Def. Opp. to Pls. Mot. Summ. Judg. ("Reply") Ex. L (State Court Record, Letter to Kristian Yates, Litigation Specialist, Nautilus Insurance (Dec. 21, 2017)) 63-67 [#34-2], refiled as Joint Mem., Att. 4 [#42-4]. Mills asserted that the foundation damage alleged in Sychantha's complaint was accidental (because Sychantha did not allege intentional or willful conduct) and was not subject to any exclusions (because Mills had not performed work on the foundation prior to the damage, nor was any work intended). Id. at 63-64. Plaintiffs enclosed their original contract with Sychantha, an estimate for repairs from Sychantha's insurance company following the fire, a subcontract between Mills and Assabet Construction Services ("Assabet"), and emails between Sychantha and Crothers describing damage to the property.[3] See Def. SOF Ex. B (Contract with Sychantha ("Contract")) [#23-2], refiled at Joint Mem., Att. 5 [#42-5]; Pls. SOF Ex. F (Insurance Estimate) 28-60 [#27-1], refiled at Joint Mem., Att. 6 [#42-6]; Pls. SOF Ex. F (Assabet Subcontractor Agreement) 62-63 [#27-1], refiled at Joint Mem., Att. 7 [#42-7].

Nautilus again disclaimed coverage. Pls. Reply Ex. L. (State Court Record, Letter to Attorney Kennedy, December 28, 2017) 83-86 [#34-2], refiled at Joint Mem., Att. 8 [#42-8].

Plaintiffs wrote to Nautilus again in January 2018. This request sought to "bring to [Nautilus's] attention certain admissions by [Sychantha]" in the state court action. Pls. Reply Ex. K (Letter to Kristian Yates, Litigation Specialist, Nautilus Insurance (Jan. 18, 2018)) 3 [#34-1], refiled as Joint Mem., Att. 9 [#42-9]. Plaintiffs asserted that Sychantha had admitted in discovery responses that: "[p]rior to the alleged damage to the foundation, [Mills and Crothers] had performed no work on the foundation"; "at the time the foundation was damaged, [Mills and Crothers] or their agents were not performing any actual work on the foundation. Rather, they

---

[3] The emails have not been submitted by either party and are not part of the summary judgment record.

were performing work and the excavator got too close to the foundation and caused irreparable harm to the foundation[]"; and she "alleges that the alleged damage to the foundation was accidental." Id. at 3-4. Plaintiffs quoted, but did not enclose, the referenced responses.

In February 2018, Plaintiffs sent Nautilus a draft of their complaint for declaratory judgment and violations of M.G.L. c. 93A. They enclosed with the draft complaint Sychantha's Responses to Mills' Request for Admissions and Sychantha's Answers to Mills' First Set of Interrogatories. See Def. SOF Ex. E (Req. for Admissions) [#23-5], refiled at Joint Mem., Att. 10 [#42-10]; Pls. SOF Ex. I (First Interr. Resp.) [#27-4], refiled at Joint Mem., Att. 11 [#42-11]. Plaintiffs formally served Nautilus with their complaint and the attached documents on March 1, 2018. Joint Mem. 2 [#42].

A few months later, Plaintiffs sent Nautilus the affidavit of Neil Crothers. Pls. SOF ¶ 4 [#37] & Ex. F (Affidavit of Neil Crothers) [#27-1], refiled at Joint Mem., Att. 12 [#42-12]. Attached to the affidavit were photographs of work being performed at the Property by individuals who Crothers asserted were not affiliated with Mills Construction, and copies of the previously provided contracts and insurance estimate. Id.

Finally, Plaintiffs sent Nautilus copies of Sychantha's Supplemental Answers to Mills' First Set of Interrogatories and receipts produced by Sychantha. See Pls. SOF Ex. G (Supp. Interr. Resp.) [#27-2], refiled at Joint Mem., Att. 13 [#42-13]; Pls. SOF Ex. H (Receipts) [#27-3], refiled at Joint Mem., Att. 14 [#42-14]. Sychantha's Supplemental Answers contain her timeline of the events at the Property, and responses to Mills and Crothers' request for information regarding expert witnesses and her Consumer Complaint against Mills.

II.     Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotation marks and citations omitted). In resolving a motion for summary judgment, the court takes all properly supported evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). When presented with cross-motions for summary judgment, the court "'must view each motion, separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010)).

Because this is a matter brought in diversity jurisdiction, the court applies applicable state law to substantive rules of decision. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

III. Duty to Defend

Plaintiffs seek a declaratory judgment that Nautilus is obligated to defend them against Sychantha's underlying action. Defendant, in turn, seeks declaratory judgment that it is not obligated to defend Mills and Crothers.

A. The Policies

In Massachusetts, interpretation of an insurance policy is "a question of law" for the court and therefore appropriate for summary judgment. Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). The scope of an insurer's duty to defend is determined by the policy, to which courts apply "familiar rules of contract interpretation." Sanders v. Phoenix Ins.

5

Co., 843 F.3d 37, 42 (1st Cir. 2016); see also B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004). Like other contracts, words in insurance policies are given their usual and ordinary meaning, see Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 280 (1997). However, any ambiguity in an insurance contract is "resolved against the insurance company that employed them and in favor of the insured." Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982) (quoting August A. Busch & Co. of Mass. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959)); see also B & T Masonry, 382 F.3d at 39 ("[A]ny ambiguity [that] permeates a policy exclusion . . . must be construed strictly against the insurer.").

In relevant part, the Policies cover "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" provided property damage is caused by an "occurrence."[4] "Property damage" includes "[p]hysical injury to tangible property" and "loss of use" of tangible property.[5] An "occurrence" is defined by the Policies as an "accident, including

---

[4] The Policies provide that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> . . . .
>
> This insurance applies to "bodily injury" and "property damage" only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[.]"

Nautilus Insurance Policies, Def. SOF Ex. C, 53 [#23-3].

[5] The Policies define "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused it; or

6

continuous or repeated exposure to substantially the same general harmful conditions." Nautilus Insurance Policies, Def. SOF Ex. C, 66-67 [#23-3].

Courts interpreting similar commercial general liability policies understand an accident as "an unexpected happening without intention or design." See Friel Luxury Home Const., Inc. v. ProBuilders Specialty Ins. Co. RRG, No. 09-CV-11036-DPW, 2009 WL 5227893, at *5 (D. Mass. Dec. 22, 2009) (collecting cases).

"General liability coverage is not intended as a guarantee of the insured's work, and for that reason, general liability policies contain 'business risk' exclusions." Dorchester Mut. Fire Ins. Co. v. First Kostas Corp., 49 Mass. App. Ct. 651, 654 (2000), citing Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 321–322 (1983). Because the "consequence of not performing properly is a part of every business enterprise," business risk exclusions in commercial general liability policies are intended to ensure that the cost of normal business risks are borne by the insured contractor. Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995). Such "business risks" have been described as those:

> which management can and should control or reduce to manageable proportions; risks which management cannot effectively avoid because of the nature of the business operations; and risks which relate to the repair or replacement of faulty work or products. These risks are a normal, foreseeable and expected incident of doing business and should be reflected in the price of the product or service rather than as a cost of insurance to be shared by others.

Sterilite Corp., *supra* at 322 n. 13, quoting from Tinker, Comprehensive General Liability Insurance—Perspective and Overview, 25 Fed'n Ins. Couns. Q. 217, 224 (1975).

---

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Nautilus Insurance Policies, Def. SOF Ex. C, 66-67 [#23-3].

7

Exclusion 2(J)(5) precludes coverage of "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations." Nautilus Insurance Policies, Def. SOF Ex. C, 57 [#23-3]. Exclusion 2(J)(6) precludes coverage of "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Policies, Def. SOF Ex. C, 57 [#23-3]. The term "your work," as used in Exclusion 2(J)(6) is defined in the Policy as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." Policies, Def. SOF Ex. C, 67 [#23-3].

### B. Review of the Underlying Claim

Under Massachusetts law, the duty to defend under an insurance policy arises when "the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Billings v. Commerce Ins. Co., 458 Mass. 194, 200 (2010). "If the allegations in the third-party complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms," the insurer has a duty to defend. Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997) (noting that the duty to defend may be triggered even if the allegations of the underlying complaint are baseless); see also Cont'l Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143 (1984) (the "initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions [. . . ]."). "The critical issue is whether the summary judgment record alleges 'a liability arising on the face of the complaint and policy.'" Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003) (quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 324 (1983)).

Extrinsic facts may add "substance and meaning to skeletal claims only adumbrated in the complaint." Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 16 (1st Cir. 2002). But an insured may not, "in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts which would create coverage." Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15 (1989). Thus "Massachusetts courts generally use extrinsic facts (such as those set forth in demand letters to the insurer) to aid interpretation of the complaint and not as independent factual predicates for a duty to defend." Open Software Found., 307 F.3d at 15.

As the insured, Plaintiffs bears the burden of proving that at least one of the underlying claims fall within the scope of coverage under the Policies. Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 230 (1997); Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001). However, the insurer is relieved of its duty to defend "when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose." Herbert A. Sullivan, 439 Mass. 387, 394-95 (citation and internal quotation marks omitted).

Even where the insured can demonstrate that claims fall under the scope of coverage, the insurer may be relieved of any duty to defend if it proves "the applicability of one or more separate and distinct exclusionary provisions." Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 404 (1st Cir. 2009) (quoting B & T Masonry Const. Co., 382 F.3d at 39 (citing Highlands Ins. Co., 676 N.E.2d at 804)). The insurer bears the burden of showing that any "occurrence" falls under an exclusion. Essex, 562 F.3d at 404 (internal citations omitted); see also Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co., 91 F.3d 278, 282 (1st Cir. 1996).

## C. Does Sychantha's Complaint Sketch a Claim Covered by the Policy Terms, and Is Any Such Claim Excluded?

Plaintiffs argue that Sychantha alleges four covered claims for damage: damage to the foundation, damage to the paint job, damage to the hardwood floors and damage to the hearth. Defendant asserts that Sychantha's complaint does not claim any damages that are caused by occurrences, and to the extent that any damage could be considered to have been caused by an occurrence, such damage is precluded from coverage by either or both of the exclusions. The court first addresses the damage to the foundation and then the remaining property damage claims.

### 1. Damage to the Foundation

The parties do not dispute that the claim of a damaged foundation amounts to a claim for "property damage" under the insurance contracts. They disagree, however, on whether Sychantha's complaint states or adumbrates a claim for damage to the foundation caused by an occurrence. Her complaint describes no accidents leading to the foundation damage. Instead, it simply states that "in or about August 2014, Mills undertook demolition of the damaged Premises. During demolition, Mills damaged the foundation." Sychantha Compl. ¶ 7 [#23-1]. Sychantha's complaint asserts further that Mills breached its contract by "failing to demolish . . . the Premises in conformity with building plans and specification," id. ¶ 24, that Mills "breached the duty of care by failing to act as a reasonable construction supervisor," and that Mills failed to properly supervise its subcontractors working at the Premises. Id. ¶¶ 37, 53. Because the complaint describes no accidents related to the foundation, and thus no "occurrences," the complaint – when considered alone – does not support an interpretation that Sychantha's claims regarding the foundation damage trigger Nautilus's duty under the Policies to defend Mills and Crothers.

Defendant argues further that even if the complaint could be interpreted as claiming damages caused by an "occurrence," thus triggering the duty to defend, such a claim is excluded from coverage by the exclusions. Sychantha's complaint asserts that the damage was caused by Mills and Crother in connection with their overall work for her, a factor which implicates exclusion (J)(5) [6]. Sychantha alleges that she hired Mills to "perform construction work to rebuild the Premises," that Mills undertook demolishing the damaged premises, and that, in doing so, damaged the foundation. Sychantha Compl. ¶¶, 24 5 [#23-1]. She alleges further that there were "many problems with the construction of home," naming various discrete issues. Id. ¶ 15 [#23-1]. The examples she provides, including that the rebuilt "foundation lacks rebar," id. at ¶ 15, are consistent with her claim that she contracted with Mills and Crothers for an overall project, from home demolition to reconstruction.

In analyzing the applicability of the exclusions, Nautilus relies on Jet Line Servs. Inc. v. American Employers Ins. Co., 404 Mass. 706 (1989). In Jet Line, the insured—a company whose business was partly to clean large petroleum tanks—was hired to perform "cleaning and repair services" on a tank that later exploded. Id. at 709-10. The Supreme Judicial Court, faced with an exclusion similar to (J)(5),[7] found that the term "on which operations were being performed" referred to an entire tank and not just the discrete portion of the tank on which operations were being performed at the moment of the damage. Id. at 711.

Plaintiffs argue that the controlling case is Frankel v. J. Watson Co, Inc., 21 Mass. App.

---

[6] Defendant argues that exclusions (J)(5) and (J)(6) both preclude coverage. Because the court finds that coverage as to the foundation damage is precluded by (J)(5), it does not reach exclusion (J)(6) as it relates to the foundation.

[7] The language of the policy exclusion at issue excluded coverage for damage "to that particular part of any property ... upon which operations are being performed" by the insured "at the time of the property damage arising out of such operations." Jet Line Servs., 404 Mass. at 711.

Ct. 43 (Mass. App. Ct. 1985). In Frankel, homeowners hired the insured contractor to move their farmhouse to an alternate site, to construct a roadway to the new side, to install underground utilities and a new septic system, and to pour and construct a new concrete foundation. After the farmhouse was moved, the superstructure began to sag, and the homeowners sought damages from the insured. In an ensuing dispute with the insurance company, the judge held that the damage to the superstructure was not excluded because the exclusion's reference to the "particular part" of the property referred to the area affected by faulty workmanship, which was not the superstructure. Frankel, 21 Mass. App. Ct. at 44-46.

Several cases applying Massachusetts law have reconciled Frankel and Jetline by focusing on the distinction "between damage to the work product of the insured and damage to larger units of which the insured's work product is but a component." Id. at 46. In E.H. Spencer and Company LLC v. Essex Ins. Co., the Superior Court reconciled Frankel and Jet Line by finding that "[c]overage under the exclusionary endorsement is dependent upon the factual situation," and that the case turned on what work the contractor was hired to perform. 25 Mass. L. Rptr. 578 (Mass. Super. May 27, 2009) (citing Lusalon, Inc. v. Hartford Accident & Indemnity Co., 400 Mass. 767, 771 (1987)). In that case, the insured submitted claims for two incidents – water damage to a basement after a painting subcontractor left the basement windows open, and a leak due to an accidentally punctured hearing system pipe. The insurance company disclaimed coverage for both incidents under (J)(5) and (J)(6). Finding that "[c]overage under the exclusionary endorsement is dependent on the factual situation," the court determined that the insured was "hired to build the dwelling in question" and that the "entire structure was under [the insured's] command." Id. at *3. Likewise, in Mello Const., Inc. v. Acadia Ins. Co., the court distinguished the insured's arguments from Frankel and found a general contractor was not

entitled to coverage regarding damage to a concrete flooring slab, because its "work product, as general contractor, encompassed the entire elementary school" it was hired to construct. 70 Mass. App. Ct. 1104, 2007 WL 2908267 at *5 (2007) (unpublished table decision). Similarly here, Sychantha claims that Mills was hired to rebuild the entire structure.

In contrast, in Gen. Cas. Co. of Wisconsin v. Five Star Bldg. Corp., the court found that a contractor hired to update the HVAC system, whose work caused water damage to the entire roof, was not subject to exclusions (J)(5) or (J)(6). No. CIV.A. 11-30254-DJC, 2013 WL 5297095, at *6 (D. Mass. Sept. 19, 2013). The court concluded that Five Star's roof-work was "merely incidental to the replacement of the [] ventilation system," and that this is a situation where the work "causes damages to other . . . property," and not "to the product or the completed work [i.e. the ventilation system] itself." Id. (citing Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995)).

While Plaintiffs view themselves as the insured in Frankel, and assert they were not "responsible for completing the entire house," Pls. Mem. 17 [#26], Sychantha's complaint leaves them more akin to the insured parties in Mello and Spencer. Although Plaintiffs assert that they were not working on the foundation at the time that the damage occurred, the scope of the work under contract, as claimed by Sychantha, included rebuilding the entire home. These allegations place the foundation damage within exclusion (J)(5) because it occurred during operations on the "particular part of real property" on which the insured was performing operations. Although Plaintiffs assert that they had not anticipated having to do work on the foundation (and apparently had not done any work prior to the damage on the foundation), Sychantha's complaint reflects her claim that Mills was hired to complete the entire project. Accordingly, even if the complaint could be construed to include a claim for damage to the foundation caused by an

13

"occurrence," coverage would be precluded under exclusion (J)(5).

Sychantha's contentions in discovery in the underlying action give some additional substance to the bare claims in the her complaint.[8] Sychantha claims that the damage to the foundation occurred when Mills and its contractor were performing work and "the excavator got too close to the foundation and caused irreparable harm to the foundation," and she characterizes the damage to the foundation as "accidental." Pls. Reply Ex. K Letter to Kristian Yates, Litigation Specialist, Nautilus Insurance (Jan. 18, 2018)) [#34-1] (citing Req. for Admissions 1-3 [#23-5]). But while Sychantha acknowledged that Mills had not yet performed work on the foundation prior to the damage occurring, and agreed they were not performing work on the foundation at the time that it was damaged, she also elaborates on her contention that the original scope of work included work on the building's foundation, asserting that "[t]he work should have included bracing or securing the foundation [s]o that it remained stable and undamaged during the work." Req. for Admissions 1, Def. SOF Ex. E [#23-5]. Thus while Sychantha's responses to the Requests for Admissions make her complaint susceptible of an interpretation of a claim for damage caused by an occurrence, they also allow for Nautilus's defense that any such occurrence is barred by exclusion 2(J)(5) on the ground that the claim seeks damage that arose out of operations on the "particular part of real property on which" Mills or its subcontractors were performing operations.

The additional evidence – affidavit, contracts, subcontracts, insurance estimate, interrogatory responses, and more – submitted by Plaintiffs does not mandate a different result. For purposes of a determination of insurance coverage, it is the underlying claimant's claims,

---

[8] Although Mills initially forwarded only selected quotes from Sychantha's responses to Requests for Admissions, the court finds no authority that would require the insurance company to accept Mills' selective quotations from those documents. Accordingly, to the extent that Sychantha's responses are considered as extrinsic facts, they are considered in their entirety.

and not the insured's contrary version of events, or even the merits of the underlying claim, that controls the issue of coverage at the duty to defend stage. See Bos. Symphony Orchestra, 406 Mass. 7, 13 (1989) (the duty to defend arises if the third-party claimant's claims, "regardless of its truth or soundness," falls under the coverage provided by the policy); Open Software Found., 307 F.3d at 15 ("Massachusetts courts generally use extrinsic facts . . . to aid interpretation of the complaint and not as independent factual predicates for a duty to defend.").

Nor would consideration of this additional material change the outcome. As Crothers asserts, the "insurance estimate referenced in the contract between Mills and Sychantha did not call for any alterations to the existing foundation" and Mills' subcontract with Assabet did not include any work on the foundation. Pls. SOF Ex. F (Aff. of Neil Crothers) (Contract) [#27-1]. But the subcontract between Mills and Assabet is irrelevant in determining the scope of work agreed upon between Sychantha and Mills, and Sychantha and Mills' contract was not limited to work covered by the insurance estimate. Instead, the contract was for "reconstruction of a single family home," with the "Contract Documents" describing the work of the contract including not only the insurance claim but also "Plans and specifications," and "Owner provided plans." Contract [#23-2]. While Plaintiffs may well have assumed based on the insurance estimate that they would not need to redo the foundation, the contract is not so limited. Sychantha's complaint and her responses to the Requests for Admission allege that the agreed-upon project was to reconstruct a single family home, without any exclusion for the foundation.

Because Sychantha claims that she had contracted with Mills to reconstruct her home, which is a "particular part of real property," the damage to the foundation – whether an accident or not – falls within Exclusion (2)(J)(5).

15

2. Damage to the Exterior Paint Job and the Hardwood Floors

Plaintiffs contends that Sychantha alleges that "repairs are needed to the trim, soffits, windows, doors, deck, and siding, and that these repairs will necessitate the house being repainted." Pls. Mem. 11 [#26]. Defendant argues that the needed repairs described by Plaintiffs are not "elements of the 'property damage' alleged by Sychantha in her law suit." See Def. Mem. Opp. 5 [#30].

On review of Sychantha's complaint, the court agrees with Defendant. The complaint alleges that there were "many problems with the construction of the home" apart from the foundation, including that the "finish trim work was not performed in a good and workmanlike manner," the "exterior trim was installed with interior finish nails which will rust over time and fail," and "the doors to the exterior leak." Sychantha Compl. ¶¶ 15, 15(e), 15(f). The alleged property damage claimed by Sychantha is the damage to the trim and exterior doors. And as to the trim and doors, nothing in the complaint supports an interpretation that this damage was caused by any accident, or "occurrence."

Nor can Plaintiffs obtain coverage by arguing that repairs that may be needed because of the alleged poor workmanship amount themselves to damage caused by an occurrence that is covered by the policies. First, Plaintiffs' extrinsic evidence proffered to support this argument[9] appears to be "telling the insurer facts which would create coverage," Boston Symphony Orchestra, 406 Mass. at 15, rather than providing extrinsic information to add "substance and

---

[9] See Pls. Mem. 10 [#26], citing Pls. SOF ¶ 25, Ex. I, First Interr. Resp. 10 ("Owner painted exterior out-of-pocket. After repairs of trim, soffits, windows and doors, deck and replacement of siding, entire exterior *will need to be* repainted.") (emphasis added); Pls. Mem. 11 [#26], Pls. SOF Ex. I, First Interr. Resp. [#27-4] (arguing that Sychantha seeks a claim for water damage because her First Interrogatory Responses allege that the "left front door leaks," and extrapolating that "[s]uch a leak is problematic because water infiltration causes damage to hardwood floors.").

16

meaning to [] claims only adumbrated" in the complaint. Open Software Found., 307 F.3d at 16.

Moreover, even if the alleged damage to the trim or the exterior door or the anticipated repairs could somehow be considered to have been caused by an "occurrence," they would be subject to exclusions (J)(5) and (J)(6), as they stem from Plaintiffs' work on the entire property, and amount to a claim for poor workmanship.[10]

### 3. Damage to the Hearth

Plaintiffs' claim concerning damage to the hearth fails for similar reasons. Sychantha's complaint includes no allegations at all concerning the hearth. Again, Plaintiffs' assertion of a claim by Sychantha relies entirely on her interrogatory responses, which allege that Mills "ran over seven and a half foot hearthstone and crushed material which was supposed to be saved." See Pls. SOF Ex. I, First Interr. Resp. [#27-4]. Once again, this extrinsic evidence cannot create a claim that is not even sketched in the complaint, and in any event, the damage falls under exclusion (J)(5).

## IV. 93A Allegations

Defendant's Motion for Summary Judgment also seeks summary judgment with respect to Plaintiff's G.L. c. 93A claims. Def. Mem. 16–18 [#22]; see Def.'s Mem. Opp. 10 [#30]. Defendant argues it has not committed a violation of either M.G.L. 93A or G.L. c.176D because it has advanced and argued a plausible interpretation of the insurance policy in good faith. Mills contends that Nautilus violated G.L. c. 93A by failing to defend Mills against Sychantha's suit.

---

[10] Plaintiffs argue that they were not responsible for any "interior or exterior painting," and therefore that Sychantha's allegations regarding painting do not implicate "their work," or trigger any exclusions. See Aff. of Neil Crothers (Pls. SOF Ex. F) ¶ 11 [#27-1]. Setting aside the issue of whether Sychantha makes such an allegations, Plaintiffs' evidence, which includes photographs of individuals painting the property (who Crothers assert are not affiliated with Mills) is not relevant, because Sychantha's claim is not that Mills caused damage while painting the home, but that in constructing the home, Mills allegedly used "interior finish nails [on the exterior of the house,] which will rust over time and fail." Sychantha Compl. ¶ 15(f).

Plaintiff is entitled to relief under G.L. c. 93A only upon a showing that the Defendant engaged in "unfair or deceptive acts or practices." G.L. c. 93A, § 2. See Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co., 802 F.3d 39, 54 (1st Cir. 2015) ("[A] violation of Chapter 176D constitutes only probative evidence, not per se proof, of egregious business misconduct for a Chapter 93A, § 11 business-to-business claim."). "[W]hether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact[.]" Boyle v. Zurich Am. Ins. Co., 472 Mass. 649, 661 (2015) (quoting Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 171 (2013)).

For the reasons discussed above, the court finds that Defendant is not liable under 93A because it has advanced and argued a "plausible interpretation" of the insurance policy in good faith, offering along the way to reassess based on any new evidence that Mills wished to provide. See, e.g., Def. SOF Ex. D Letter to Mills Construction (Nov. 27, 2017) [#23-4] (asking Mills to provide any "additional information or facts . . . that may change our decision . . . thereby providing us the opportunity to reconsider our position."). "An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L. c. 93A." Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987). See also Premier Ins. Co. of Massachusetts v. Furtado, 428 Mass. 507, 510 (1998) ("[If] an insurance company has a reasonable and good faith belief that it is not obliged to make a payment to a claimant who is asserting a violation of G.L. c. 93A and G.L. c. 176D, § 3(9), asserts the point, and offers to take active steps to resolve the dispute, the company's action, even if ultimately held to be based on a misinterpretation of the law, would not be an unfair settlement practice.").

V. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment [#21] is

hereby GRANTED and Plaintiffs' Motion for Summary Judgment [#25] is DENIED.

    IT IS SO ORDERED.

Date: March 31, 2019                                                 /s/ Indira Talwani
                                                                            United States District Judge